IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KATHY E. HILLIKER,   No. 6:16-cv-00827-HZ

        Plaintiff,   OPINION & ORDER

   v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.

Kathryn Tassinari
Brent Wells
Harder, Wells, Baron & Manning, P.C.
474 Willamette, Suite 200
Eugene, OR 97401

   Attorneys for Plaintiff

1 - OPINION & ORDER

Billy J. Williams
Janice E. Hebert
U.S. Attorney's Office
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

Kathy Reif
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Kathy Hilliker brings this action for judicial review of the Commissioner's final decision denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). Because the Commissioner's decision is free of legal error and supported by substantial evidence in the record, it is affirmed.

## BACKGROUND

Plaintiff was born on August 30, 1960, and was fifty-two years old on her amended alleged disability onset date. Tr. 30.[1] Plaintiff has a ninth grade education and past relevant work experience as a sandwich maker. Tr. 29–30, 231. On October 25, 2012, Plaintiff filed her application for disability insurance benefits ("DIB") and SSI. Tr. 20. Plaintiff's original alleged disability onset date was August 10, 2009. *Id.* Her claims were initially denied on February 14, 2013, and again upon reconsideration on June 26, 2013. *Id.* Plaintiff then requested a hearing on July 19, 2013. *Id.* On June 17, 2014, a hearing was held before Administrative Law Judge ("ALJ") Robert Frank Spaulding. Tr. 38. At that hearing, Plaintiff moved to voluntarily dismiss

---

[1] Citations to "Tr." refer to pages of the administrative record transcript, filed here as ECF 12.

her DIB claim and to amend her alleged disability onset date to October 25, 2012. Tr. 40–41. ALJ Spaulding granted her motion. *Id.* On October 9, 2014, the ALJ issued a written opinion denying Plaintiff's SSI application. Tr. 31. The Appeals Council denied Plaintiff's request for review, making the ALJ's opinion the Commissioner's final decision that Plaintiff now challenges in this Court. Tr. 1–9.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

At the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

At step three, the Commissioner determines whether claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets its burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the Commissioner found that Plaintiff had not engaged in substantial gainful activity since her amended alleged disability onset date. Tr. 22

At step two, the Commissioner found that Plaintiff had the following severe impairments: osteoarthritis; somatic dysfunction; degenerative disk disease of the cervical spine; pseudoseizures; major depressive disorder; and panic disorder. *Id.*

At step three, the Commissioner found that Plaintiff's impairments or combination of impairments did not meet or equal the severity of one of the listed impairments. Tr. 23–24. The ALJ determined that Plaintiff had the RFC to perform light work with the following limitations:

> [C]laimant is limited to no climbing of ladders, scaffolds, and ropes. The claimant is limited to no exposure to hazards such as unprotected heights and moving mechanical parts. The claimant is limited to occupations that do not require the operation of vehicles such as automobiles, forklifts, carts, etc. The claimant is limited to simple and routine tasks. The claimant is limited to occasional interactions with coworkers and the public.

Tr. 25.

At step four, the Commissioner determined that Plaintiff was unable to perform any past relevant work. Tr. 29–30.

At step five, after considering Plaintiff's age, education, work experience, and RFC, the Commissioner determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including mail clerk and office helper. Tr. 30–31. Therefore, the Commissioner concluded that Plaintiff was not under a disability as defined by the Social Security Act. Tr. 31.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). Courts consider the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

## DISCUSSION

Plaintiff raises four challenges to the ALJ's decision for this Court's review. First, she argues that the ALJ failed to provide clear and convincing reasons for according little weight to

the opinion of Dr. Craig Morton, Ph.D, a treating provider. Second, she argues that the ALJ failed to provide sufficient reasons for discounting Plaintiff's subjective symptom testimony. Third, Plaintiff argues that the ALJ failed to provide germane reasons for discounting the third-party lay testimony of Shelia Hilliker, Plaintiff's mother. Lastly, as the result of the purported errors listed above, Plaintiff argues that the ALJ improperly formulated Plaintiff's RFC to conclude that a significant number of jobs existed in the national economy that Plaintiff could perform.

## I. Medical Testimony

Plaintiff contends that the ALJ erred in failing to Credit Dr. Morton's opinion regarding Plaintiff's functionality. Dr. Morton wrote that Plaintiff had marked difficulty in maintaining focus sufficient to communicate effectively. Tr. 690. He also wrote that her impairments in concentration, memory, and speech caused her to struggle to follow all but the simplest instructions and that her frustration stemming from those problems would, in turn, cause her to be irritable in a manner that would not be tolerated by an employer or customer. *Id.* He also opined that Plaintiff would miss two or more days of work in a single month due to her impairments. *Id.* The ALJ accorded little weight to Dr. Morton's opinion on the grounds that it was inconsistent with the record, internally inconsistent, and not supported by a detailed rationale. Tr. 28–29.

The uncontroverted opinion of a treating provider "cannot be disregarded unless clear and convincing reasons for doing so exist and are set forth in proper detail." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). An ALJ's clear and convincing reasons must be "supported by substantial evidence." *Ryan v. Comm'r*, 528 F.3d 1194, 1198 (9th Cir. 2008) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). An ALJ will give "controlling weight" to a

treating source's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). An ALJ may reject the opinion of a treating provider where the opinion is: based largely on the claimants subjective complaints which have been discredited; inconsistent with medical records; or is internally inconsistent with the provider's own treatment notes. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601–02 (9th Cir. 1999); *Valentine*, 574 F.3d at 692–93. "[T]he ALJ is the final arbiter with respect to resolving disputes in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041–42 (9th Cir. 2008) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995)).

The ALJ's stated the following regarding Dr. Morton's opinion:

> I give little weight to this opinion because it is not consistent with the record as a whole and the opinion is not supported with any explanation. Further, although Dr. Morton repeats what the limitations are, he does not provide detail regarding the rationale for the limitations or an explicit residual functional capacity relating to the claimant's ability to work. His opinion [sic] the claimant's behavior would "not be tolerated by an employer" is a vocational determination, outside his scope of expertise. The assessment is also internally inconsistent with his own records, where he reported that the claimant appeared happier and less irritable. At best, Dr. Morton's treatment notes are sparse with little narrative provided. I note that the only social limitation discussed appeared to be alcohol related, and the most complete treatment records revolved around drinking. When compared to other treatment records, it appears that Dr. Morton based his opinion in large part on the claimant's subjective complaints and the claimant's interactions with other providers rather than his own interactions.

Tr. 28–29 (internal citations omitted).

//

//

### A. Inconsistencies with the Medical Record

A report's consistency with other records, reports, or findings can form a legitimate basis for evaluating the reliability of a report. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996). A medical provider's opinion can be rejected if unsupported by medical findings, personal observations, or test reports. *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998). Plaintiff correctly points out that several of the portions of the record that Defendant identified predate Plaintiff's amended disability onset date. Defendant cited to several portions of the medical record showing that Plaintiff's mental status exams, thought content, memory, and speech were typically within normal limits. *See* Def.'s Br. 3, ECF 25. The majority of those medical records, however, were created prior to October 25, 2012, Plaintiff's amended disability onset date. "Medical opinions that predate the alleged onset of disability are of limited relevance." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (citing *Fair v. Bowen*, 885 F.2d 597, 600 (9th Cir. 1989)). Defendant's reliance on those portions of the record that predate Plaintiff's amended onset date, therefore, do not support the Commissioner's decision to accord little weight to Dr. Morton's opinion.

There are, however, numerous other examples of mental status exams and objective findings from within the relevant adjudicatory period showing that Plaintiff's mental status, mood, thought content, memory, and speech were within normal limits. Tr. 281–82 (noting appropriate mood, speech, and thought content); Tr. 290–91 (also noting appropriate speech, mood, and coherency of relevant thought in addition to Plaintiff's "[f]ree floating anxieties and Ruminations"); Tr. 470 (CT scan showing normal and unremarkable results); Tr. 528 ("Posture, behavior, mood and affect all within normal limits. Orientation, judgment, insight, and memory all within normal limits. Attention, concentration, and thought content all within normal

limits. . . . [Plaintiff] feels calmer than in the recent past . . . ."); Tr. 529 (also noting Plaintiff's normal mood and thought content); Tr. 539, 550, 560, 672 (noting appropriate speech, mood, and thought content).

Plaintiff argues that at other times during that same period, medical providers noted that she was tense, angry, and depressed. Tr. 550–551, 553–554. Plaintiff is asking the Court to reweigh the evidence. Where the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and the Court may not substitute its judgment for that of the Commissioner." *Sessions v. Colvin*, No. 6:13-CV-00633-CL, 2014 WL 1155303, at *3 (D. Or. Mar. 20, 2014) (citing *Burch*, 400 F.3d at 676). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). In sum, there is evidence to support the ALJ's determination that Dr. Morton's opinion is inconsistent with the record as a whole; nevertheless, the Court will review the remainder of the ALJ's stated reasons for rejecting Dr. Morton's opinion. *See Batson*, 359 F.3d at 1197 (concluding that some of the ALJ's reasons for rejecting a claimant's testimony were sufficient to uphold its credibility determination); *Carmickle*, 533 F.3d at 1162 (clarifying that the relevant inquiry is "whether the ALJ's decision remains legally valid" despite any error).

The ALJ found that Dr. Morton's conclusion that Plaintiff's irritability would be unacceptable to an employer was a vocational conclusion, not a medical one. Dr. Morton stated that Plaintiff's irritability stemming from her "communication problems and unresolved physical

symptoms" would "not be tolerated by an employer or a customer." Tr 690. An opinion that a claimant is disabled is not a medical opinion under the Act. *See McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) (finding that while the treating physician's evaluation of a patient's ability to work, as opposed to a diagnosis of an impairment, may be "useful or suggestive of useful information," a physician "ordinary does not consult a vocational expert or have the expertise of one"). The Act does "not give any special significance to the source of an opinion on issues reserved for the Commissioner" such as opinions that the claimant is disabled or unable to work. 20 C.F.R. § 404.1527(d). The nature and extent of Plaintiff's irritability is an appropriate subject for a medical opinion; however, the effects that Plaintiff's irritability may have on an employer is a vocational determination reserved for the Commissioner. In any event, the ALJ accounted for Plaintiff's irritability in her RFC by limiting Plaintiff to occasional interactions with coworkers and the public. Tr. 25. Accordingly, the ALJ did not err in discrediting Dr. Morton's opinion regarding how an employer or customer would react to Plaintiff's irritability.

### B. *Internal Inconsistencies*

The ALJ also found that Dr. Morton's opinion was internally inconsistent. "A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of the treating physician or another treating provider." *Ghanim v.* Colvin, 763 F.3d 1154, 1161 (9th Cir. 2014) (citing *Molina v. Astrue*, 674 F.3d 1104, 1111–12 (9th Cir. 2012)). Dr. Morton stated in his written report that Plaintiff had marked difficulty in maintaining focus and had impairments in concentration, memory, and clarity of speech. Tr. 690. In several of his treatment notes, by contrast, Dr. Morton wrote that Plaintiff was happier and less irritable. Tr. 525 (noting that Plaintiff: "Appeared more relaxed. Less angry. Smiling and Laughing. No evidence of severe psychological distress"); Tr. 526 (noting that Plaintiff "is thinking more

clearly and feeling calmer, though she is still angry[,]" and that she was "relatively clear [and] not irritable" with him); Tr. 531 (noting that Plaintiff was "[i]rritable, though less so than in previous session"); Tr. 671 (also noting that Plaintiff was happier and less irritable); Tr. 680 ("Some irritability, but also able to smile and laugh toward the end of the session. Speech vague with some latencies. Tension. Difficulty concentrating but no evidence of racing thoughts and rapid speech."). Furthermore, Dr. Morton noted that Plaintiff's mental health impairments were lessened and her mood improved when she volunteered at thrift shop. Tr. 27, 684, 688. Accordingly, the Court finds that substantial evidence in the record supported the ALJ's decision to discount Dr. Morton's opinion because it was inconsistent with his own treatment notes.

### C.  *Opinion Not Supported by a Detailed Rationale*

Defendant argues that Dr. Morton's opinion letter lacks support because his treatment notes labeled "objective" or "assessment" did not contain mental health status examinations and merely listed Plaintiff's diagnoses. The ALJ found that Dr. Morton's opinion was contrary to treatment records and primarily based on Plaintiff's subjective complaints and other providers' interactions with Plaintiff rather than his own interactions. Tr. 29. "[T]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)). As discussed above, Dr. Morton's opinion letter was inconsistent with his own treatment notes as well as other medical evidence in the record. Rather, Dr. Morton appears to have based his opinion on Plaintiff's subjective symptom testimony which, as discussed below, the ALJ properly discredited. Therefore, the ALJ did not err in concluding that Dr. Morton's opinions about Plaintiff's capacities were inadequately supported by clinical findings.

The Court concludes that the ALJ relied on legitimate bases for according Dr. Morton's opinion little weight.

## II.     Plaintiff's Testimony

Next, Plaintiff challenges the ALJ's determination that her "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible[.]" Tr. 26. In particular, the ALJ found that Plaintiff's neck problems, seizures, and self-reported mental health problems were not credible. Tr. 26–27.

The ALJ is responsible for determining credibility. *Vasquez*, 572 F.3d at 591. Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle*, 533 F.3d at 1160 (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on 'clear and convincing reasons'"); *see also Molina*, 674 F.3d at 1112 (the ALJ engages in two-step analysis to determine credibility: First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged;" and second, if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give "specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms.") (internal quotation marks omitted).

When determining the credibility of a plaintiff's complaints of pain or other limitations, the ALJ may properly consider several factors, including the plaintiff's daily activities,

inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). The ALJ may also consider the ability to perform household chores, the lack of any side effects from prescribed medications, and the unexplained absence of treatment for excessive pain. *Id.*; *see also Tommasetti*, 533 F.3d at 1039 ("The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.") (internal quotation marks omitted).

    As the Ninth Circuit explained in *Molina*;

> In evaluating the claimant's testimony, the ALJ may use ordinary techniques of credibility evaluation. For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms[.] While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting[.] Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.

674 F.3d at 1112–13 (internal citations and quotation marks omitted).

    At Plaintiff's administrative hearing, she testified that she suffered from chronic neck pain and stiffness which caused constant headaches and prevented her from turning her head. Tr. 49, 51–52. Plaintiff also testified that she suffered from frequent episodes of seizures. Tr. 54–55. During Plaintiff's alleged seizures, she claims that "everything starts going kind of surreal" and

she "start[s] losing control of [her] arms and legs" and "slurring [her] words really bad" such that she "can't speak." Tr. 55–55. She further testified that at its peak, she experienced fifteen seizures in one week. Tr. 55. She claims that her seizures "destroy [her] whole day" and she would sleep from eight to eighteen hours to recover afterward. Tr. 78. Regarding Plaintiff's claimed mental health symptoms, she testified that she suffered from manic episodes that would render her unable to do anything for entire days. Tr. 60–61, 65.

### A. *Unsupported by the Medical Record*

Regarding Plaintiff's alleged neck problems, the ALJ found that examinations showed a normal range of motion and that Plaintiff had no weakness or loss of sensation in that area. Tr. 26. Further, the ALJ noted that the record showed that Plaintiff's neck pain and headaches improved over time. *Id.* With respect to seizures, the ALJ found that Plaintiff's episodes were "unsubstantiated by any objective evidence or other supporting evidence." Tr. 26. Specifically, Plaintiff's claim that she had fifteen seizures in one week was incredible in light of normal MRI and EEG testing as well as medical exams showing no indication of seizures. Tr. 26. Indeed, nothing in the medical record indicated that Plaintiff suffered from seizures. Tr. 635, 645, 660, 661, 671, 674. Plaintiff admitted that neurologists who reviewed two MRIs and a CAT scan found no organic reason for Plaintiff's alleged seizures. Tr. 52–53. Regarding Plaintiff's self-reported mental health impairments, the ALJ wrote that Plaintiff reported being happier and less anxious at times and that her "[m]ental status exams were within normal limits, with normal mood, affect, concentration, and thought content were within normal limits." Tr. 26. Additionally, Plaintiff had reported in July 2012 that Xanax worked well to control her symptoms. Tr. 26, 311. The ALJ wrote that as of October 2013 Plaintiff:

> [R]eported that her life was in a 'more stable phase.' Her depression symptoms were considered moderate with no evidence

> of severe psychological distress. During an appointment, she appeared less angry, less irritable, she was more relaxed and the claimant was smiling and laughing. In fact, the Claimant reported improvement since stopping Topamax medication and thinking more clearly.

Tr. 26–27.

Plaintiff points out that although she responded well to medication and her examinations produced normal results, she still experienced severe periods and those same providers said that she was at times unfocused, uncoordinated, angry and anxious. Tr. 490, 493, 497, 506, 508, 537, 550, 551, 554, 562, 575. The Court is unpersuaded by this argument. The ALJ properly relied on the lack of support in the medical record for Plaintiff's claimed mental health impairments as a legitimate basis for rejecting her testimony regarding the severity and extent of her symptoms. While there was evidence that Plaintiff's mental health symptoms fluctuated, as discussed above, there are numerous and consistent examples in the record showing that Plaintiff's mental status was within normal limits and that her symptoms improved over time and with medication. Therefore, the Court concludes that the ALJ legitimately relied on the medical record to discount Plaintiff's subjective symptom testimony.

### B. *Activities of Daily Living*

The ALJ also found that Plaintiff's claimed symptoms were inconsistent with her work activities and activities of daily living. Tr. 27. The ALJ noted that after her alleged onset date Plaintiff volunteered at a thrift shop and cleaned houses up to five days a week. Tr. Tr. 27, 56–57. Plaintiff stated that she volunteered at a thrift store two days a week for three and a half hours at a time. Tr. 56–57. Plaintiff also testified that she cleaned her mother's house and did yard work, including mowing the lawn, weeding, and growing vegetables, usually for at least four hours at a time. Tr. 66–67, 247, 295, 671. The ALJ noted that Plaintiff reported in March 2014

that she did "yard work for fifteen hours during the period of three days." Tr. 27, 671. Additionally, Plaintiff reported that she used public transit, could walk for thirty to forty minutes, and had "no problems with personal care, preparing simple meals and performing light household chores" Tr. 27, 68, 244–51.

The nature and consistency of Plaintiff's daily activities provided a legitimate basis for the ALJ's decision to reject her symptom testimony. There was substantial evidence supporting the ALJ's finding that Plaintiff's daily activities "strongly suggest[]" that her impairments were unsupported by the record and would not prevent her from working. Tr. 27. *See Orn*, 495 F.3d at 639 ("Claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting."). While there was some evidence suggesting that Plaintiff had "some difficulty functioning," the ALJ identified several activities discrediting Plaintiff's "testimony to the extent that [it] contradict[ed] claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113 (citing *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010)). Plaintiff's daily activities belying her claims of totally disabling impairments includes, in part: volunteering at a thrift store, cleaning, working in the yard, gardening, and walking for extended periods. Thus, the Court finds that the ALJ properly relied on Plaintiff's daily activities to reject her symptom testimony.

### C. Character

Lastly, the ALJ found "that given the general tone of the medical evidence in the record, the claimant has generally been less than honest and at times manipulative with providers." Tr. 27. For example, one provider wrote that Plaintiff threatened to kick her and "said that she had to threaten to have a mental health crisis in order to get an appointment with a therapist." Tr. 532. Plaintiff "acknowledged being consciously manipulative." *Id.* The ALJ concluded that such

statements rendered Plaintiff's mental-health allegations less than fully credible. Tr. 27. A lack of candor with medical providers is a legitimate reason supporting an ALJ's decision to reject a plaintiff's testimony. *Ghanim*, 763 F.3d at 1163 (stating that an ALJ may consider testimony from the claimant that is less than candid in assessing credibility).The ALJ identified a sufficiently specific example of Plaintiff's behavior showing that she, on at least one occasion, consciously manipulated medical providers and was not completely honest with them.

In this case, the ALJ provided specific, clear, and convincing reasons supported by substantial evidence in the record for discounting Plaintiff's subjective symptom testimony. The ALJ found that her claimed symptoms were unsupported by medical evidence, inconsistent with her work activities and activities of daily living, lessened by medication, and called into question by her less than honest statements to medical providers. Tr. 26–27.

### III. Lay Witness Testimony

Plaintiff argues that the ALJ erred in his consideration of the lay witness testimony of Ms. Hilliker, Plaintiff's mother. The ALJ gave Ms. Hilliker's testimony partial weight and declined to credit her statements regarding Plaintiff's social functioning and irritability. "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). Lay witness testimony cannot be disregarded without comment and the ALJ must give germane reasons for discounting such testimony. *Molina*, 674 F.3d at 1114. Germane reasons for discounting lay witness testimony include: conflicting with medical evidence and inconsistency with the plaintiff's daily activities. *Lewis v. Apfel*, 236 F.3d 503, 511–12 (9th Cir. 2001). Another

germane reason to discredit lay testimony is that it is substantially similar to the claimant's validly discredited allegations. *Valentine*, 574 F.3d at 694.

      Ms. Hilliker submitted a third party report in which she stated that she spends "about 1 hour a day" with Plaintiff. Tr. 252. Together, they "attend church, visit with friends," and "do yard work." *Id.* When prompted to explain how Plaintiff's conditions limit her ability to work, Ms. Hillker wrote: "Chronic pain throughout her body. Unable to concentrate. Occasional panic attacks, anxiety, depression. She has hepatitis C, asthma, COPD, severe arthritis." *Id.* She further wrote that Plaintiff's illnesses prevent her from concentrating on a subject, work for long periods, and sit still and rest. Tr. 253. Regarding Plaintiff's social issues, Ms. Hilliker wrote that she: "sometimes is quick to take offense when none was intended. Unhappy and depressed. A prickly personality at times. Very helpful to others in spite of troubles, overly emotional." Tr. 256. Ms. Hilliker also reported that Plaintiff engaged in several activities including: cooking meals daily, light chores, mowing, and walking to stores. Tr. 254–55. When asked to check which items were affected by Plaintiff's conditions, Ms. Hilliker checked the boxes indicating memory, concentration, and using hands. Tr. 257.

      The ALJ wrote:

> I give partial weight to this assessment. The activities listed closely resemble those described by the claimant, indicating few functional limitations. I find the record, however, does not support the hand limitation described by Ms. Hilliker. I note that despite complaints about disabling panic attacks, the claimant was able to use public transportation. But, I also note it is significant that Ms. Hilliker did not report witnessing any seizures, despite claimant's assertions. Any limitations supported by the record have been addressed in the residual functional capacity.

Tr. 28 (internal citations omitted). The Court finds that the ALJ gave germane reasons for partially discounting Ms. Hilliker's lay opinion. Ms. Hilliker's indication that Plaintiff's

conditions limited her hand functioning was contradicted by Plaintiff's daily activities and unsupported by medical evidence in the record. Further, Ms. Hilliker's statements regarding Plaintiff's social limitations were contradicted by Plaintiff's social activities including volunteering, attending church, visiting friends, and using public transportation. In any event, Ms. Hilliker's statement that Plaintiff could be a "prickly person" is appropriately reflected in Plaintiff's RFC which includes a limitation for only occasional interactions with coworkers and the public. Accordingly, the Court finds that the ALJ's treatment to Ms. Hilliker's lay testimony was not in error.

### IV. The ALJ's Disability Determination

Because the Court finds that the ALJ's determinations regarding Dr. Morton's opinion, Plaintiff's symptom testimony, and Ms. Hilliker's lay testimony were not in error, it concludes that Plaintiff's RFC was supported by substantial evidence and properly formulated. Accordingly, the Court finds that the Commissioner carried its burden to prove that Plaintiff retained the RFC to perform "other work" in the national economy. Therefore, the Court affirms the ALJ's ultimate disability determination.

### CONCLUSION

Based on the foregoing, the Commissioner's decision is affirmed and this case is dismissed.

IT IS SO ORDERED.

Dated this ___ day of __Sept__, 2017

MARCO A. HERNÁNDEZ
United States District Judge